I'd like to first turn to Mr. Palomino's argument that the government breached its agreement by implicitly arguing for a sentence greater than the terms of the plea agreement. And this case is governed by a recent decision issued by this court, Morales-Heredia, which was identified as a related case in our opening brief, but which was decided after the briefing in this case was concluded. The Morales case identified the same inflammatory editorializing by the prosecutor of information presented more neutrally by the PSR that the opening brief discusses. And in this case, in fact, it was more egregious because the prosecutor continued the inflammatory rhetoric after the district court had indicated that the lowest sentence it would impose was the low-end sentence which the prosecutor had agreed to recommend. And I want to discuss briefly some of the elements discussed in the Morales-Heredia case. The Morales-Heredia court talked about the prosecutor's recommendation of a six-month term ringing hollow as he repeatedly and unnecessarily emphasized Morales' criminal history, adding for good measure his personal opinion that his defendant's history communicates a consistent disregard for the laws of the United States. The Morales case also said that the prosecution may not superficially abide by its promise to recommend a particular sentence while also making statements that serve no practical purpose but to advocate for a harsher one. Let's focus on the facts of this case. What did the prosecutor say during the sentencing hearing or wrote in the sentencing position paper that you contend is a violation or breach of the plea agreement? Thank you, Your Honor. Yes, in the sentencing position, the prosecution repeated the same excerpts from the plea agreement that had already been restated more neutrally from the PSR. He argued that the offensive condition was very serious, using force, violence, and intimidation, violently robbed, threatened two bank tellers who undoubtedly feared for their lives. He also argued about defendant having amassed 28 criminal history points. He said that defendant remained unwilling to change his criminal lifestyle and his substantial prison sentences had failed to deter him from committing new crimes. And he was now escalating his conduct. Well, was any of that untrue? It was not untrue, but it had already been presented more neutrally in the PSR. And as the Morales-Reddia Court emphasizes, you're not entitled to editorialize and use inflammatory rhetoric if you've agreed to recommend a low-end sentence. What was inflammatory about the rhetoric? If it was all true? It was true, but it was presented in an argumentative and inflammatory fashion. And I think that... What does that mean? It means that he, instead of presenting it neutrally as the PSR did, he talked about it being very serious, violent robbing, and the tellers undoubtedly fearing for their lives. And he talked about amassing criminal history points. He referred to a juvenile adjudication as juvenile convictions. But I also want to get to, and I think it became more outrageous and more egregious when we got to the sentencing hearing, if I can get to that point. The district court, and before he, the counsel argued, the district court said, here's where I am. He talked about the same factors that the prosecutor had talked about, extensive criminal history, and then, and the mental distress of the tellers. And the district court then said, we are obviously talking about a guideline sentence, I think, in this case. The issue for me is where on this guideline range that sentence should be. So at that point, the district court is saying, I'm thinking about a sentence between 84 and 105 months. At that point, also, the probation officer had recommended a mid-range sentence of 94 months. So at that point, when the defendant is facing a 94-month recommendation from the PSR and a sentence up to 105 months, and the lowest at the 84 months, the prosecutor to comply with his obligations under the plea agreement should have actually been neutral or should have been mitigating to pull the court back from 105 months. But instead, the prosecutor continued to hammer aggravating facts. The prosecutor said the government would add that given the defendant's substantial criminal history, there are concerns about deterrence, protecting the public, given that the defendant, despite prior criminal convictions, has not been deterred. And he talks about the defendant has escalated the nature of his crimes. And also says these crimes are really serious, and even if the defendant went to the banks without the intention to harm anyone, the harm that was affected is long-lasting. And then when the district court finally got around to announcing its sentence, the district court echoed these same issues that had been addressed by the prosecutor. He said, I think the crimes are very serious, so at a minimum it should be a guideline sentence. Mr. Palamino should have known about the pain and suffering he was inflicting about the tellers, which was the same thing that the government had argued. So we're arguing that, in fact, the district court was influenced by the prosecutor's violation of the plea agreement when the prosecutor argued aggravating facts, even though the district court had stated the least sentence that the court would impose was an 84-month sentence, which was the sentence the prosecutor had agreed to recommend. We also contend that this was plain error, because it was clear that it's error that was plain, as established in Morales Heredia. It also, as established in Whitney, the courts in Whitney said that the third factor, affecting substantial rights, was met in a case where the prosecutor does not adhere to his agreement to present a united front in front of the court. The record reflects that the trial judge had his own views about the sentencing factors and his own views about this defendant. So I'm not clear how a re-emphasis of a sentence at the lower, at the bottom of the guidelines, would have occurred but for these comments. Well, I think, Your Honor, the district court did have feelings. In other words, the last prong of the plain error test. Exactly. I understand. The last two prongs, I'm sorry. Well, I understand. I think the last prong is satisfied in Whitney. It says that if the government violates the plea agreement, so if there is a breach, that impacts the judiciary. So the prong really is whether or not there was an impact on the sentence. And I argue that there is, because even though, as you say, the district court did have a grasp of the sentence, the district court said repeatedly he was struggling. And there was not only the bad facts, but there were also a lot of mitigation. The district court talked about how he had a substantial compassion for Mr. Palomino, that he understood Mr. Palomino had lived a very terrible life. He had been living homeless for 12 years. He suffered from drug addiction. He also suffered, the court referred to schizophrenia and bipolar. All these mental issues which, if treated, could have produced, could have made Mr. Palomino into a gainfully employed citizen. But every time the court tried to discuss mitigation, like, for example, the court talked to the prosecutor and said, don't you think that these were driven by drug addiction, some of these offenses, in approaching it in a mitigation faction, because drug addiction is curable, as are the mental illness he faced. And the prosecutor just went on about how terrible the crimes were. So I think that when the district court was struggling, the fact that the prosecutor did not talk about any mitigation, but continued to talk about aggravating factors, influenced the district court. And unless there are any further questions, I'd like to reserve some of my time. Thank you, Your Honor. Thank you. Thank you. May it please the court, Wilson Park on behalf of the United States. The core argument of defendant's appeal is that the only purpose of the government's argument at sentencing was to persuade the district court to impose a sentence above the low end. But that simply can't be the case here. Before the government said anything at sentencing, the defendant specifically asked the district court for a below guidelines 70-month sentence. And the government's comments at sentencing were made in response to the defendant's request for a downward variance and in support of the government's low-end recommendation. Furthermore, even assuming that there was a breach here, which the government certainly does not concede, the defendant cannot establish plain error because he fails to meet. He didn't stick by the prosecutor. He didn't stick by his promise on what he would recommend. Your Honor. And that was all negotiated, right? Certainly, Your Honor. Yeah, you had an agreement. The government would respectfully disagree. First, the government would note that it repeatedly made the low-end recommendation, both orally and in writing, and both before and during the sentencing hearing. It recommended 84 months. And again, the government would bring this back to the fact that there was a below guideline recommendation from the defense. And under the Whitney case and its progeny, the key question to ask in the breach analysis is whether the government's argument served any purpose other than to persuade the district court to impose a higher sentence than it agreed upon, if the answer to that question is yes, because there was some other practical purpose. But he didn't keep his word. Again, Your Honor, the government would note that it repeatedly made that low-end recommendation. Again, in its sentencing position, which was filed after the defendant filed his sentencing position, and at the sentencing hearing, it concluded its remarks by stating that the government stands by the plea agreement and that its recommendation was a low-end recommendation. And in response to that, the district court made clear that there was no prejudice here. The district court stated, that's what I assumed, an 84-month sentence. The judge is going to make up his own mind, which was obvious here. And why didn't the prosecutor just say, well, that's the government's recommendation and we think it's fair and just sit down? Well, Your Honor, again, prior to the sentencing hearing, the defendant filed his sentencing position. What's that got to do with it? Well, Your Honor. I don't think the judge was going to impose a 70-month sentence here. Is that what the prosecutor was afraid of? I certainly believe that it was possible, Your Honor. And the government would note that. A lot of things are possible. Well, when the government was asked to argue by the district court. But you know, the trouble down in San Diego, there's so much tension going on all the time, which is not a good thing. It's been going on for a long time. Is that right? Am I correct? I'm sorry, that there's tension? Tension between the two offices. I believe. This is a central district case, though. That's right. This is a Los Angeles case, Your Honor. I'm sorry. But in Orange County, you know, you were the prosecutor at the sentencing. I was, Your Honor. Well, there's tension here in LA, too, plenty of it. I understand, Your Honor. Well, just a couple of points that I'd like to make in response to that. First, at the time when the government was asked to argue by the district court, defense counsel had not yet argued, the defendant had not allocuted. And at that point, the government could not have interpreted the district court's statement to be a final rejection of the defendant's request for a downward variance. First, that's not what the district court said. And second, when the government was asked to argue, again, neither the defense counsel nor the defendant had addressed the court, and given the defendant's the government had every reason to believe that the defense would zealously argue for a below-guideline sentence. And the defense did, as shown by its considerable sentencing arguments, which spanned approximately seven minutes, according to the reporter's transcript. The government would submit... Well, you know, I think this is the situation in this case, or at least this is how I am preliminarily assessing it. You've got a situation where you negotiated a very specific recommendation. You indicated that the government would recommend the low end, right? So no higher than that. And I think the question in Whitney is whether, despite maintaining the government's position at sentencing that a low-end recommendation be forthcoming, whether there were facts argued that implicitly urged the court to impose a higher sentence. Now, I take it from what you're arguing is that the defense had reserved the right to argue for a below-guideline sentence, right? And so the government was concerned about that. But didn't the district judge said right off the bat that this was going to be a within-guideline sentence? You had a victim there who allocated or made a victim impact statement. And did the government make these arguments that the defense complained about after the district court already indicated that, in his view, this was a within-guideline sentence? It did, Your Honor. The government did make its sentencing arguments after the district court made that statement. But again, the government would note that even when viewing that statement in isolation and ignoring the rest of the record, at best, the district court indicated that it was thinking or considering a sentence within the guideline range. And that becomes particularly apparent when viewing the entire record. At the very outset of the hearing, Judge Carney advised the parties that he had not come up with a tentative sentence because he wanted to hear from everyone. Even after the victim's allocution, the district court again stated, I'd like to hear from everybody, and then I'll determine what the sentence should be. And the government would also point to the Michella case here. In that case, which is materially similar to this case on a number of points, but... Well, if I hear you correctly, what you're telling us is that once you heard the defendant argue for a below-guideline sentence, what you wanted was the highest sentence you could get out of this. No, Your Honor. That's what your comments seem to be driving toward. I apologize if that's... I mean, your sentencing comments are not the ones you made today. So once you heard him pitch for a below-guideline sentence, then you basically just let him have it. No, Your Honor. It was purely a response to the below 70-month sentencing recommendation from the defense, but the government... And then you reminded the judge of each and every aggravating factor in the record. The recidivism, the lack of contrition, the threats to the victims, and so forth and so on. But again, Your Honor, those statements were made in support of a substantial 84-month sentencing recommendation. The government would note that in the Michelle case, the district court stated before hearing from the parties, and again, this is a case where the government had agreed to recommend a low-end sentence, and the defense was arguing for a below-guideline sentence. When the district court addressed the parties, he stated that he was dissatisfied with the government's low-end recommendation, that he was dissatisfied with the defendant's below-guidelines recommendation, and he also indicated that he was considering a sentence at the high end of the range. The government then recommended a low-end sentence, but also responded to the defense arguments for a below-guideline sentence in that case, and argued only aggravating factors. And in that, including commenting about the... But did you, in this case, during the course of the sentencing hearing bring out any mitigating factors that would warrant a low-end sentence? It's a fine line, and I really appreciate that. The way this plea agreement was negotiated, the defense had the ability to argue below guidelines, you promised to do low-end of the guidelines. The district court wanted to hear from both sides, and in the course of responding to the court's comment, I think the concern raised by the defense is that only aggravating factors were emphasized, and not mitigating factors. I suppose if you said, you know, I'm going to raise some comments that are, you know, aggravating in nature, but this really explains why a low-end recommendation is appropriate, not any higher than that. Did you put it in context in any fashion? At the sentencing hearing, after the district court's statement, only aggravating... But you made a deal, you know, didn't you? I did, Your Honor. You made a deal, you didn't stick by it. Your Honor, from the... So how, you know, the sentencing guidelines, in my opinion, first of all, they're unconstitutional, right? Supreme Court has told us that, but to pacify certain folks, they said, well, they're unconstitutional, but we want you to consider them anyway. They're the starting point, and now the judge isn't bound by it, but if he goes through these 35, 53 factors, he can go below the guideline. So it's, I mean, were you really worried that Judge Carney was going to impose a 70-month sentence? I was, Your Honor. And again, the government repeatedly stated that its recommendation was a low-end sentence, and just to put it in context, again, there was... This recommendation was that figure you agreed upon. What was that again, 70 months? The agreed upon, the low-end recommendation was 84 months. Eighty-four months. That's correct, Your Honor. That you made in writing. Yes, Your Honor. Yeah. And at the sentencing hearing orderly. And the defendant was arguing for 70 months, is that... Yes, Your Honor. And just help me understand, I'm always at a loss to understand this. I mean, why did the difference... For this man, this guy who had these long history of homelessness and mental illnesses and substance abuse, why did the difference between 70 months and 84 months make any difference to you? Well, Your Honor, the government agreed to recommend the low-end sentence, which was 84 months, that was the low-end of the sentencing guidelines, and... Did you think, did you believe that 70 months for this man would have been a miscarriage of justice? No, Your Honor, I would not characterize that as being a miscarriage of justice. However... Why did you care? Well, the crimes were very serious in this case, Your Honor. And he was... But we're not talking about somebody who's going to get, you know, a home confinement or probation. This man has been in and out of jail. He's, you know, no meaningful substance abuse treatment. No, he's essentially, you know, been homeless for a great part of his life. It wasn't like he was not going to get punished. I understand, Your Honor. But for the purposes of, again, deterrence, protection of the public. And again, I would just note that this crime involved... But he was going to jail. He was going to a federal correctional institution for six years. That's a long time, right? I understand, Your Honor. I mean, just think about all the things you've done for the last six years. I mean, you know, you're locking this man up in a cage for six years. What difference does it make between six years and, you know, 70 months and 84 months? Why does the government care about that stuff? Well, from the government's perspective, the analysis is guided by the guidelines. And the government believed that... As from your perspective, I mean, you're not the government. We're all the government. From my perspective, yes, Your Honor. But... From the prosecutor's perspective. From the prosecutor's perspective. Yes, Your Honor. There were both aggravating and mitigating factors in this case. And the aggravating factors were significant. There was a victim here who stated that a year after the incident happened, that he was still in fear, that he thought he was going to die for the first time in his life. And... This is the victim who had the pen. By the way, I know this was stipulated in the plea agreement, but I take it that the party's views are that this pen that he brandished is a dangerous weapon capable of inflicting death or great bodily injury? Your Honor, I saw the video and the victim certainly appeared scared. The defendant had the pen in his hand and was making... Well, there's no question that he was fearful. I mean, he had suffered the consequences well after the event was over and he showed up in court and wanted to make a statement. I'm just talking about whether the pen itself is a dangerous weapon capable of inflicting great bodily injury. I know it wasn't squarely presented in the appeal, but I was curious if the party has negotiated that. Well, Your Honor, the government noted that under sentencing guidelines section 1B1.1, a dangerous weapon is defined as one of three things. And the third thing is an object that was used in a manner that created the impression that the object was capable of inflicting injury or serious bodily injury. And I believe that's the provision that it was negotiated under. Well, so the folks in the back of the room, tell them what the object was. It was a pen chained to the customer service counter at Bank of America. It had a ballpoint pen chained to the customer service counter. Yes, Your Honor. He picked it up and made a stabbing motion towards the victim, right? Yes, Your Honor. And that's the dangerous weapon enhancement that the parties negotiated. And there was also the defendant, when he was at the teller window, claimed that he had a bomb and that he was going to detonate the bomb. And the victim, in this case, of course, allocated that that was the primary fear for him, was that he thought he could- Well, no, the bomb's not the dangerous weapon. He didn't have the bomb, right? In order for the dangerous weapon enhancement to apply, did you negotiate the enhancement based on the bomb or the pen? To be frank, Your Honor, if I'm remembering correctly, I believe it was both based on the bomb and the pen.  Thank you, Your Honor. Thank you. I just wanted to briefly respond to a few issues that were raised in the prosecutor's argument. One of the things the prosecutor said in response to Judge Parker's comment was that he agreed to recommend the 84 months because that was the terms of the plea agreement. But the terms of the plea agreement was that he agreed to recommend a sentence no higher than the low end of the guideline range. So he was not precluded from asking for a lower sentence than the low end of the guideline range. But I also want to respond to the prosecutor's comments that he was responding to the defendant's request for a low end sentence. And if you look at the sentencing transcript, the district court at the outset of the sentencing, before counsel had argued, went on for five pages discussing aggravating and mitigating, and then concluded at the end of that five page discussion that we're obviously talking about a guideline sentence in this case. The issue for me is where on this guideline range the sentence should be. We're talking about a range from 84 to 105 months with a PSR recommendation of 94 months. And he asked to hear from the prosecutor. And that's when the prosecutor goes into the aggravating factors that we've discussed before. And Judge Nguyen also asked if the prosecutor brought out mitigating factors. And there were no mitigating factors in the prosecutor's presentation. At one point when the court tried to talk about mitigation, he said, you know, I think these offenses were largely driven by drug addiction, approaching it from a mitigating perspective that if he got treatment, he wouldn't offend. And the prosecutors went on again about all the aggravating factors in this case. So I think based on all these arguments, and also I wanted to address the victim who allocuted very movingly in this proceeding. And he did say that he was in fear. He also, though, said that he did not bear any ill will towards Mr. Palomino and wanted God to bless him. So I think he also understood the nature of the mental illness and drug addiction that was driving Mr. Palomino, unless there are any further questions. Thank you, Your Honor. Thank you. All right, this matter is submitted.
judges: Pregerson, Parker, Nguyen